Mr. Yesner? Ms. Yesner, excuse me. Are you ready? Good morning, Your Honors. My name is Donnelly Yesner, representing the Coalition for Common Sense and Government Procurement. We are asking this Court to invalidate and set aside an executive action of the Veterans Administration for three principal reasons. First, Congress considered and rejected extension of depot pricing under the Veterans Health Care Act to prescriptions dispensed by retail pharmacies. The VA and DoD knew that the statute applied to direct purchases from manufacturers, and if they want to expand the statute, they need to ask Congress to reconsider the issue. Mr. Yesner, could you address the jurisdiction issue, please? Yes, Your Honor. I think this Court has jurisdiction over this matter because it is one to which Section 552A1 refers in the FOIA reporting law because it involves the Secretary's pronouncement concerning the application of the Veterans Health Care Act to a particular program and the command on how to carry out that application of the law. Well, we're talking about a letter issued by the Veterans Administration. We're not talking about any rules that were promulgated through notice and comment. It's simply a letter. Why is that nothing more than simply an interpretive commentary? Well, it's more than mere an interpretation of the law, but even if it was simply an interpretation of the law, statements of interpretation of general applicability are matters to which Section 552A1 refers, statements of general applicability. They don't have to be substantive rules that are promulgated are also within 552A1, but 552A1 is not limited to substantive rules, and we do believe that whether the agency followed rulemaking procedures or not, that the matter is a substantive rule, and this Court has jurisdiction to consider whether an action that falls within 552A1 also falls within 553. The agency cannot avoid rulemaking procedures by doing what is essentially rulemaking through a letter and then avoiding review by this Court because the substance of the letter is substantive rulemaking. Does the VA have enforcement authority with respect to the pronouncements in this letter? Your Honor, the VA has authority under Section 603 that is rather narrow in the administrative function that it has, but it does have authority to enforce compliance with the law. So what this letter does is it expands the obligations under the law and treats those pronouncements in the letter as if they had the force of law, and for that reason, they are substantive rules. So if this proceeding had not been filed and the pharmaceutical manufacturers decided that this goes far beyond the statute, what procedure would the VA follow to enforce this? The VA has rights under the statute to cancel the master agreements that the manufacturers have, which would then affect their rights to have their drugs covered by Medicaid. It creates obligations which the VA intended to enforce, and those obligations would be enforceable outside of the agency, and that is the concern of manufacturers as well. And that is why the VA agreed to stay. What the VA agreed to stay pending this proceeding was taking any enforcement action against manufacturers that declined to pay the refunds that the letter commanded that they pay. You're challenging what you perceive to be a rule-making enterprise here, but let me ask you this. There would be another way, theoretically, to challenge this, would there not? I mean, could the manufacturers not make the payment that has been requested to them and then file an action in the Court of Federal Claims seeking reimbursement of the payment? I know you haven't pursued that, obviously, but theoretically, that could be done, could it not? Tell me if you think I'm wrong on that. If manufacturers made the payment that's being required of them under the Dear Manufacturer letter, in other words, this overage, and could they not then make the payment and then file an action in the Court of Federal Claims to recover it, claiming that they were entitled to it under the correct interpretation of the statute or regulations? I don't believe so, Your Honor, because they wouldn't be claiming, the claims wouldn't be rooted in a contract action. Why wouldn't it be under a statute or regulation? I mean, we're here under a statutory regulatory program, right? Yes, Your Honor. And couldn't they say, well, we weren't entitled to, we were not required properly under the statute to make that payment, we made it improperly, we were required to improperly make it, now get it back to us. Well, I suppose that could be true of any rule that had an adverse impact or had a monetary impact on the public that was subject to the rule, that you could claim damages down the road, but what we are challenging is the government's, the authority of the government to do what it's doing and the rulemaking process that it followed and not the ultimate impact that it might have. Let me ask you one thing. If we were to agree with you with respect to the rulemaking issue here, in other words, note it's your position that notice and comment was not followed and it should have been, correct? Yes, Your Honor, that is correct. If we agree with you on that, we would not in any way would we address the merits of this dispute. Namely, we wouldn't, if we agreed with you, our course would be to send it back for the notice and comment procedure that you're claiming. Isn't that the case? Your Honor, if that were the only issue here, that would be true, that it could go back to the agency for proper procedures. The problem here is that the VA has no authority under the statute to implement the Veterans Health Care Act through any mechanism other than a discount on purchases directly from manufacturers and under the Supreme Court's recent decision in Gonzales, the agency action must be authorized by an express delegation. And here, the only delegation of authority that the Secretary of the VA has is very narrow. It's to execute agreements, to collect and disseminate data, to audit the price itself. It's very, very difficult to implement the statute through mechanisms other than purchase agreements with manufacturers. Are you saying then that if we find that notice and comment was in fact required, we should send it back with some kind of instruction? That is one possibility, Your Honor, but I think that it might be futile because the VA does not have notice and comment rulemaking authority in this area. It does not have authority to issue rules with the force of law in this particular area, and that is what is required by the statute. The statute needs to be amended, and the agency needs to go back to Congress. Congress has addressed this and determined that the statute did not apply to retail pharmacy transactions, and for reasons that Congress had at the time, rejected the Department of Defense's request for that application. Now, if one were to disagree with you on that proposition, I suppose what you would say we would have to do is make a finding contrary to what you're urging or ruling, and then send it back for notice and comment on the plan that was formulated, correct? Your Honor, I think that the issue of whether Congress specifically rejected the DOD's plan is but one reason why the agency has no authority to implement this procedure. The determination itself is irrational because it takes a statutory scheme that involves prices charged by manufacturers on pharmaceutical supplies they sell directly to the government and imposes that. Well, what would then notice and comment be for? You're saying notice and comment procedures were required and were not followed, correct? Yes, Your Honor. And when one hears that kind of an argument, the first reaction is, okay, if that is correct, the case has to go back. It would only go back, Your Honor, if you found that there was authority by the VA to promulgate such rules, and we don't believe there is. So you're saying we have to make that threshold determination if we say, yes, authority goes back, if no authority, it doesn't. That's your view? Yes, Your Honor. How does your supplementary authority that you sent to us about Section 603 come into play here? Well, Your Honor, another very important aspect of the Gonzales case was its clarification of what is meant by Skidmore deference when you're talking about a non-binding interpretation of a statute by an agency. And what the court said was that this court, any reviewing court, it follows an interpretation by the agency only to the extent it finds it persuasive in the factors, some of which We know Skidmore jurisdiction. What does 603 have to do with authority in this case? Your Honor, the point I was making was that the supplemental authority here would assist the court in determining whether the validity of the reasoning followed by the VA was rational and whether it failed to consult with any others outside its own agency and whether it engaged in thorough consideration. All of those factors that this court can look at in deciding whether or not they think the interpretation is persuasive, it's illuminated in the materials that we provided to you. So even if the court felt that it was not part of the record, you could still consider them in finding it persuasive. But we also feel that it's part of the record because the action that we are challenging is the one from which legal consequences flowed, not the statement of policy that was internal to the agency from two years prior to that. So everything that was before the agency at the time, it issued the letter, should be in the record. Ms. Gessner, are you asking us to rule that the VA had no authority to issue this letter or are you asking us to rule that the VA's interpretation of the underlying statutory arrangement was incorrect? We're not asking the court to say that the VA does not have any authority to issue guidance to manufacturers in areas over which it has authority, concerning the calculation of the ceiling price, for instance. What we're asking the court to validate are the pronouncements in the letter on the application of the statute to retail pharmacy prices, third-party transactions. So you're challenging the interpretation of the statute? As well as the command in the letter to achieve federal ceiling prices by paying rebates in accordance with the procedures that were posted on the Department of Defense website. It's really two pieces. Ms. Gessner, you realize you're well into your rebuttal time. Yes, Your Honor. Thank you very much. Mr. Chadwick? May it please the court, good morning. The VA's central point here, which goes both to the jurisdiction and the merits, is that this requirement on the part of drug manufacturers to sell to DoD, when DoD is buying through a depot contracting system to give DoD prices no higher than the ceiling prices, is a requirement posed by Congress. That requirement exists. The requirement would exist if the DoD manufacturer letter were not written. The requirement would exist in principle if the VA secretary's letter to the secretary of DoD didn't exist. Well, why did you do this right from the outset of the act, then? From the outset of the act, you seem to have concluded otherwise. No. Well, another important point to recall, and I think it goes directly to where Ms. Gessner began, is that there were two generations, if you will, here's what we try to call them in the brief, of this prescription program under TRICARE. The first was raised in the letter from DoD in 1996. That correspondence begins at page 70 of the joint appendix. That one did not include these electronic tracing features. It didn't include the immediate prior authorization to make the disbursement at the retail pharmacy. It didn't have these tracing features. VA, showing that its interpretation actually has teeth, said, no, we don't think that qualifies. Now, it's no secret that DoD wanted to design a program that would come into the definition of depot contracting. It seems to me, to kind of cut through all this, is that you'd like to transfer the administrative cost to the pharmaceutical companies, let them administer this program, let them chase around all the administrative details, which is perhaps fine, but they didn't contract under that understanding. The contract is under the understanding that you were the depot, not them, and that you were handling the administrative details, not them. If you wanted to enter a new contract, I'm sure the price would be different if they're going to do the administration. Is there some, am I missing something in that sort of brief analysis? You're going to shift administrative costs to them, but you want to keep the old contract where they didn't expect under that old contract to have to shoulder the administrative expenses. That may be a correct factual description, but what it flows from is the requirement to sell to DoD or any of the big four agencies, give the ceiling prices no higher than the ceiling prices when a depot contracting system is used. It flows from the fact that assuming DoD has now set up a depot contracting system that is entitled to those prices. That may be a correct factual distinction. That's, and by the way, this depot definition, which comes from the statute, is incorporated into the master agreements with the drug manufacturers. That's really all that this VA Secretary's letter and correspondence is about. The VA Secretary was asked to decide, to concur, if you will, with DoD, that DoD had succeeded in creating a depot contracting system. That's the determination. That's the determination that was transmitted to DoD Secretary Rumsfeld in 2002. That's the determination that's announced in the deer manufacturer letter in 2004. The rest of it, the payment, rebate, refund structure, et cetera, is under the DoD umbrella. And if there are certainly challenges that were to be raised to that, that would have to arise in a different forum. We're here to review if there is jurisdiction, something that the VA Secretary said. The VA Secretary has a central, but in this case, limited role to the extent that the VA Secretary is the secretary of the cognizant agency, the sort of lead agency, expressly mentioned in the statute as obviously the signatory of these agreements. DoD has used depot contracting systems for years. And the DoD properly went to the VA Secretary to seek concurrence. Are you saying, Mr. Chadwick, that the DoD could have issued this letter itself? It could have, yes. I mean, as a matter of internal government administration, clearly the DoD is going to go to the lead agency to seek concurrence. I mean, that's just how it works. The cognizant agency under the statute is the VA. But it seems to me that they did more than seek concurrence, that there's been an ongoing interaction back and forth for some time with some—that clearly shows that the VA's position was contrary to the DoD at one point until the DoD restructured the program. That's correct. Until— And only then, the VA sort of signed on. The Secretary concurred with this new arrangement. And then the VA, as the administrative authority, the agency with the administrative authority then promulgated the letter. It seems to me that this very much changed the policy, or at least changed the scope of this bulk purchase program prior to the time the letter was issued. Well, again, as a factual matter, clearly the DoD was trying to effect a change. The DoD was trying to create a program that would meet the definition in the statute. And in 1996, VA considered the first iteration of TRICARE-RX, as we call it, the prescription benefit program, and determined that DoD had not succeeded. DoD asked Congress to sort of bless that version. Congress said, no, we don't agree with that. DoD then went back to the drawing board, created this new program, this tracing feature, so that VA would, as we've said, be able to follow the money, if you will, so that there's an individual transaction each time, particular drugs that are traceable go to the beneficiary, and then came back to VA with that. And that required some further explanation. But at that point, with the new program, the second generation TRICARE pharmacy benefit is what the VA secretary said, OK, now you've got it. Now we agree that that's a demo contract. The contract, the master agreement with the pharmaceutical manufacturers were signed off by whom, on behalf of the government? The VA secretary. The VA secretary. So that's the only contractual arrangement that is in place, that is between the VA and the manufacturers? Yes. And what is the enforcement mechanism in this latest pronouncement by the VA of the applicability of the statutory scheme to the TRICARE program? Well, in the first instance, it's DoD that has been requesting the money. And so to the extent that there's a dispute about money, it would be between drug manufacturers and DoD, not between drug manufacturers and the VA. There is, at a higher level, if you will, the VA secretary has authority to strike particular drugs from the pricing agreements, or to even strike the I mean, if a manufacturer refuses to give a rebate, contending that this pronouncement goes far beyond the scope of the statute, what enforcement mechanisms are in place? Would the DoD then take action? Yes. Or the VA? The DoD. It's the DoD that has the, takes the position that a debt is created to DoD when the DoD is entitled to prices no higher than the ceiling prices. A contractual debt? Statutory. Just a statutory obligation in the statute that the DoD is supposed to pay no more than the ceiling price when it lies under a debtor-contractor system. DoD is then asking, sending these letters with the detailed electronic pharmacy tracing data, saying, here's what we bought in the last month, the last quarter, through our TRICARE pharmacy benefit program, and the, along with the drug makers, a rebate is calculated. And so that occurs through the pharmacy benefit office through DoD. Jeffrey, you heard the discussion that we were having with Ms. Yesner. First point, on the jurisdictional issue, I've posited the proposition, you can tell me whether you think it's correct or incorrect, that from a jurisdictional standpoint, one of the manufacturers could make the payment that this new regime requires, but then go into the court of federal claims asserting that the payment was improperly made or improperly required under the statute and seek it back. Is that correct? Or is that right or wrong? I know nothing that would prevent them from raising what we call an illegal exaction claim. If a citizen, anyone, pays money to the government and has a claim that the government has no legal right to it, then you can sue in the court of federal claims. Now, getting to the point about the rulemaking, the notice and comment, Ms. Yesner is urging that notice and comment procedures were required and she's saying that the focus of these notice and comment procedures would be the merits of the decision, so to speak here, that's reflected in the letter. If we were to determine that notice and comment procedures were required, should we or should we not address the merits of the issue, namely whether the determination reflected in the letter is correct or should it just go back for notice and comment? Short answer is I think it should just go back and decide that it is a rule, first of all, which obviously we don't agree with, and that it's substantive rather than an interpretative rule that imposes something beyond what the statute imposes. If it should have been issued presumed to notice and comment, then it would be, in a sense, void. The quandary there, though, is that the statutory obligation still exists. So if you take away what the VA Secretary has said about it, frankly, it's a tough question. What have you actually taken away? If there still is a statutory obligation to sell to depot contracting systems pursuant to the statute, the price is no higher than the ceiling price. But that would get thrashed out in the notice and comment procedure, right? Yes, but the point I'm making is that our position would be, and I think it's apparent on the face of the statute, that there still exists a requirement to sell to depot contracting systems. The question is, are you selling to a depot contracting system? Now, if you were to take away the rule, I think the question may still remain whether DOD, even pending the notice and comment procedure, whether DOD has a depot contracting system. Presumably that could be worked out in the course of review. As to the jurisdiction issue, very briefly, the reason we call it an order, and we understand that it's not perhaps a simple issue, under the APA, but when an agency reviews a particular set of facts and determines whether that particular set of facts meets some legal standard, that, in our view, is an order. A rule, in our view, is something more general and generic. An interpretive rule usually is saying something like, we will approach problems like the following in the following way in the future. But aren't you creating new obligations and duties here? And isn't that often a delineating factor for whether it's just interpretive or substantive? The answer to the second question is yes. The statute, again, where I began though, is the statute imposes the requirement to sell to a depot contracting system. Either DOD has a depot contracting system or it doesn't. Whoever gets to decide that. Ultimately it will be decided that DOD has one or it doesn't. That's the requirement that's being addressed. The VA Secretary isn't saying anything beyond that. The Secretary is looking at the statute, trying to determine whether DOD has succeeded. That doesn't appear to be, to us, promulgating or acting in a legislative capacity in any way. It's simply looking at the statute. Isn't the Secretary saying, you have a depot contracting system and I'm setting forth these obligations under that system? I guess what I'm saying is, couldn't you have a situation here where part of the deer manufacturer's letter is interpretive rule but part is substantive? I suppose, but our own view is that none of it was intended to be substantive. Oh, I understand, but as a theoretical matter I could see maybe one could perhaps come to that conclusion. But I would go further than that and say if some of it were substantive then perhaps some of it would be void. But our reading of the particular portions relating to the rebates and refunds that the industry has pointed to our view of that is that the letter states statutory interpretation and then goes on to say, for the details of this go look at DOD's plan. That's an advisory, that's an informational point of the letter. It wasn't intended in the first place and shouldn't be read as imposing any requirements in and of itself. To the extent that there's a dispute about those requirements it's a dispute with DOD. I just wanted to emphasize also that the Secretary's follow-the-money approach here has resulted in several negative answers to DOD. DOD has said that we have a depot contracting system here. Back at the beginning, in 1994 there was a standard CHAMPIS benefits there was a non-network, more standard beneficiary reimbursement system for pharmaceuticals then there was the 96 program all of which the VA Secretary said no to. It's the mail-order pharmacy program and this particular electronic tracing second-generation drug here, RX, that the VA Secretary has approved. And our position is, and of course the Court is going to decide if it reaches the issues that the standards applied by the HC have been consistent. The programs themselves have changed. Thank you. Mr. Chadwick, did you have something? Yes, Your Honor, I think that it's clear that the Department of Defense has no right to demand collection of refunds on third-party transactions in the absence of an interpretation of the statute by the Veterans Administration. There is no such obligation specified in the agreement or the statutory agreement that incorporates its terms. So that's why the DOD asks the VA for the interpretation in the first place. I think it's also clear as Judge Schall pointed out that part and parcel of the determination that the statute applied to a particular program that involves a payment of a benefit for a beneficiary to a provider of health care that doesn't involve any purchase from a manufacturer, that part and parcel of that is how to carry that out. The only way it would be possible to apply, as the VA says in its letter, to achieve pricing  and the VA had to come up with a mechanism to do that and that's what the command provides for. So I think finally my last point would be that the government is not procuring, cannot be procuring under a depot system. Depot system means purchasing from a supplier, distributing to an entity. It cannot be procuring unless it's doing so under a contract, a supply contract. Again, that's an issue if we sent it back we would not get to it, which you're just saying, I think. If you determined that there's simply... If we determined, I'm sorry to jump in... That it was a substantive rule and so should go back for... We wouldn't address what you were just talking about. I believe that's right, Your Honor. If you sent it back for following notice of comment rulemaking the court would not reach the merits of his time. That's not to say that the issue wouldn't come up again because of the authority problem. Thank you, Ms. Yesner. Our next case is Citizens Financial Services versus the United States.